**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMUEL LAURENCY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KENNY'S CANDY & CONFECTIONS, INC.,<br><br>Defendant. | Civil Action No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Samuel Laurency ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Kenny's Candy & Confections, Inc. ("Kenny's" or "Defendant") based on personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

## NATURE OF ACTION

1. This is a putative class action lawsuit on behalf of purchasers of Wiley Wallaby Low Sugar Gluten Free Licorice (the "Products")[1] as shown below:

[1] The Products include Wiley Wallaby Low Sugar Gluten Free Licorice in Very Berry and Watermelon flavors, in all package sizes and multipacks. Other than varying flavors, the Products are substantially identical in their formulation, labeling, sizing, and advertising: each bears the Sugar Representation on its front label in the same size, placement, and manner, and each bears the same Nutrition Facts panel. Plaintiff reserves the right to amend this definition to include any other Wiley Wallaby product that discovery reveals is sweetened with allulose and labeled with the Sugar Representation.







2. Defendant manufactures, markets, and sells the Products under its Wiley Wallaby brand through brick-and-mortar and online retailers throughout the United States, including in the State of New York, and directly to consumers through its own website.

3. Defendant prominently advertises, markets, and sells the Products as licorice that contains only "1G SUGAR" per serving (the "Sugar Representation"). The Sugar Representation appears in large type on a rainbow-colored banner at the center of the front label of every Product, and it promises that each serving contains no more than one gram of sugar in total. Defendant reinforces the Sugar Representation by calling the Products "Low Sugar" licorice and by telling consumers on the back of every package that "we removed all but 1 gram of sugar."

4. Defendant intentionally misleads consumers into believing that the Products contain only a trace amount of sugar. It does this because consumers want foods and snacks—candy included—with little or no sugar, which they believe are healthier and will help them

manage their weight and blood sugar and reduce their overall sugar and calorie intake. Defendant markets the Products specifically to that audience, calling them “the better-for-you candy,” advertising “9g NET CARBS/SERVING” on the front label, and labeling the Watermelon flavor “KETO FRIENDLY.”

5. However, unbeknownst to consumers, the Products are sweetened with a large quantity of the sugar allulose—seven grams per serving, according to Defendant’s own labeling, or approximately 35 grams in each 5.5-ounce bag. Allulose is the second-most predominant ingredient in the Products by weight and makes up nearly a quarter of each serving. The Products therefore contain far more sugar than the Sugar Representation promises.

6. Defendant has thus engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and/or selling the Products with the Sugar Representation. Every package of the Products misleads consumers into believing each serving contains only one gram of sugar.

7. Plaintiff and Class Members purchased the Products, which are designed, marketed, manufactured, distributed, and/or sold by Defendant. Plaintiff and Class Members relied to their detriment on Defendant’s Sugar Representation, when the Products in fact contain many grams of the sugar allulose. Plaintiff and Class Members would not have purchased the Products—or would not have paid as much as they did to purchase them—had they known the Sugar Representation was false. Plaintiff and Class Members thus suffered monetary damages as a result of Defendant’s deceptive and false representation.

8. Plaintiff brings this action individually, and on behalf of similarly situated individuals who purchased the falsely and deceptively labeled Products, for violations of New York General Business Law §§ 349 and 350, fraud, and unjust enrichment.

## PARTIES

9. Plaintiff Samuel Laurency is a citizen and resident of Yonkers, New York, who has an intent to remain there, and is therefore domiciled in New York. Plaintiff purchased the Products from retail stores in New York, including ShopRite and Walgreens stores in Westchester County, New York. Most recently, in or about September 2026, Plaintiff purchased Wiley Wallaby Low Sugar Gluten Free Licorice in Watermelon flavor from a ShopRite store in Yonkers, New York for approximately $5.99 per bag. Prior to his purchase of the Product, Plaintiff reviewed the Product's labeling and packaging and saw that it was labeled and marketed as containing "1G SUGAR" per serving. Based on the Sugar Representation, Plaintiff believed he was purchasing a product that contained no more than one gram of sugar per serving. Plaintiff relied on Defendant's Sugar Representation in deciding to purchase the Product. Accordingly, the Sugar Representation was part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known the Sugar Representation was not true. Plaintiff paid more for the Product, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling complained of herein. In making his purchase, Plaintiff paid a price premium for a product that claimed to contain only one gram of sugar per serving.

10. Defendant Kenny's Candy & Confections, Inc. is a Minnesota corporation with its principal place of business in Perham, Minnesota. Kenny's, a KLN Family Brands company, formulates, manufactures, labels, markets, distributes, and/or sells the Products nationwide under its Wiley Wallaby brand, including in this District. The Products' labels state that they are "Manufactured By: Kenny's Candy & Confections," "A KLN Family Brands Company," in "Perham, MN 56573."

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than 100 members of the proposed classes, and at least one member of the proposed classes is a citizen of a State different from Defendant.

12. Defendant is a citizen of Minnesota, the State under whose laws it is incorporated and in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Plaintiff is a citizen of New York. Minimal diversity is therefore satisfied. And because Defendant is not a citizen of New York, the exceptions set forth in 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply.

13. This Court has personal jurisdiction over Defendant because Defendant purposefully directs the marketing, distribution, and sale of the Products into New York, including to retailers in this District; because Defendant transacts business and contracts to supply goods in New York; and because Plaintiff's claims arise out of his purchase in New York of a Product that Defendant labeled, marketed, and sold here.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and purchased the Products in this District, and Defendant distributes, markets, and sells the Products in this District.

## FACTUAL ALLEGATIONS

### A. Sugar Reduction Claims

15. Sugar is considered a contributor or cause of many different medical conditions, including weight gain, obesity, diabetes, cavities, and other diseases in adults.

16. A growing trend toward living healthier lives has led consumers to invest in their health by choosing foods and snacks that contain less, or no, sugar.

17. In particular, consumers on low-carbohydrate diets, like the ketogenic diet, look for low-sugar claims such as a small, stated number of grams of sugar per serving. Defendant targets these consumers directly: the front label of every Product advertises "9g NET CARBS/SERVING," and the front label of the Watermelon flavor bears a "KETO FRIENDLY" badge.[2]

18. In response to this consumer demand, food manufacturers—including Defendant—increasingly place sugar-content claims on the front of their packaging, including "sugar free," "no added sugar," "low sugar," and statements that a product contains only one or two grams of sugar.

19. As a result, consumers seek out, and are willing to pay more for, products that contain little or no sugar.

**B. <u>Defendant's Sugar Representation is False and Misleading</u>**

20. Defendant prominently and unambiguously represents on the front label of every Product that each serving contains "1G SUGAR." The Sugar Representation appears in large white letters on a rainbow-colored banner directly beneath the Wiley Wallaby logo. Elsewhere on the front label, Defendant states that the Products are "SWEETENED WITH STEVIA"—without any mention of allulose:

---

[2] *See, e.g.*, Wiley Wallaby, *Low Sugar Gluten Free Watermelon Licorice*, https://shop.wileywallaby.com/collections/low-sugar-gluten-free-licorice/products/low-sugar-gluten-free-watermelon-licorice (last visited Oct. 28, 2026).






21. Defendant's own labeling confirms that each of the Products contains many grams of allulose. The Products' labels are identical in all material respects: each bears the Sugar Representation on its front label; each repeats the Sugar Representation on its back panel, alongside the statement that "[e]ven though we removed all but 1 gram of sugar and all of the gluten, dairy and high fructose corn syrup, we kept the soft, chewy texture and bursts of flavor you love"; each lists allulose as the second ingredient, after soluble corn fiber; and each discloses on its back panel that every serving contains seven grams of allulose, as shown below.

22. The label of the Very Berry flavor represents that each serving contains "1G SUGAR." The ingredient statement lists allulose as the second ingredient, and the back panel discloses that each serving contains 7 grams of allulose ("22g TOTAL CARBS - 5g FIBER - 7g ALLULOSE - 1g GLYCERINE," for "9g NET CARBS per serving"):




23. The label of the Watermelon flavor represents that each serving contains "1G SUGAR." The ingredient statement lists allulose as the second ingredient, and the back panel discloses that each serving contains 7 grams of allulose ("22g TOTAL CARBS - 5g FIBER - 7g ALLULOSE - 1g GLYCERINE," for "9g NET CARBS per serving"):




24. Consumers reasonably believe that each serving of the Products contains no more than one gram of sugar in total.

25. However, the Products all contain the sugar allulose, which Defendant adds as a standalone ingredient during manufacturing and lists as the second ingredient on each Product's ingredient statement. Allulose, also known as D-allulose or D-psicose, is a monosaccharide that is structurally similar to fructose and is a sugar under 21 C.F.R. § 101.9(c)(6)(ii). *See Franco v. Chobani, LLC*, No. 25-2087, slip op. at 7 (7th Cir. July 27, 2026) ("There's no dispute that allulose is a monosaccharide. Because the definition includes every monosaccharide and the following

parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii).”). Because allulose tastes like conventional sugar but contributes fewer calories, it is often used in place of table sugar as a bulk sweetener. That is how Defendant uses it here: allulose is listed second on the Products’ ingredient statement, while stevia—the only sweetener Defendant identifies on the front label—is listed last.

26. The U.S. Food and Drug Administration (“FDA”) agrees. FDA’s regulations provide that “[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose).” 21 C.F.R. § 101.9(c)(6)(ii). When FDA adopted that definition, it stated that, pending any future rulemaking, allulose, as a monosaccharide, must be included in the declaration of sugars. 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016). FDA has never conducted that rulemaking, “which means its original definition of sugar remains in force.” *Franco*, slip op. at 10. And in *Franco*, the United States filed an amicus brief at the Seventh Circuit’s invitation setting out FDA’s position that the regulatory definition of total sugars is unambiguous and includes allulose. Br. for the United States as Amicus Curiae at 11–12, *Franco*, No. 25-2087 (7th Cir. June 29, 2026), Dkt. No. 44.

27. FDA’s 2020 guidance stating that it would exercise enforcement discretion as to the declaration of allulose in the Nutrition Facts panel does not change the analysis. As the Seventh Circuit held, that guidance is not an interpretation of the regulatory definition of sugars but merely “an announcement of a change in enforcement policy,” and a manufacturer should know that FDA’s enforcement priorities do not immunize it from suits under state law. *Franco*, slip op. at 9–10.

28. The following table summarizes the Sugar Representation and allulose content of each flavor. Adding each flavor’s allulose to the sugars Defendant already declares yields the

following minimum sugar content per serving:[3]

| Flavor | Sugar Representation | Allulose per Serving | Minimum Total Sugars per Serving |
|---|---|---|---|
| Very Berry | 1g | 7g | 7.5g |
| Watermelon | 1g | 7g | 7.5g |

29. The Sugar Representation is a direct statement about the amount of sugar in the Products and is therefore an expressed nutrient content claim. 21 C.F.R. § 101.13(b)(1). A nutrient content claim may not be made on a food's label unless it is made in accordance with FDA's nutrient content claim regulations. *Id.* § 101.13(b). A statement of the amount of a nutrient that does not implicitly characterize the level of that nutrient is permitted only if "it is not false or misleading in any respect." *Id.* § 101.13(i)(3). The Sugar Representation does implicitly characterize the Products as low in sugar—Defendant itself calls the Products "Low Sugar" licorice—and it is therefore independently unauthorized, because FDA has defined no "low sugar" claim, *see id.* § 101.60(c), and the Products' labels bear no disclaimer that the Products are not low in sugar, *see id.* § 101.13(i)(1)-(2). Compliance with these requirements is determined using "the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9," *id.* § 101.13(o) – under which allulose is a sugar. Because the Products contain many times more sugar than represented, the Sugar Representation is false and misleading, and the Products are misbranded. *See* 21 U.S.C. § 343(a)(1), (r)(1)(A); N.Y. Agric. & Mkts. Law § 201(1).

30. Plaintiff does not seek to enforce the Federal Food, Drug, and Cosmetic Act. Plaintiff's claims arise under New York law and seek to impose no requirements beyond those federal law already imposes. *See* 21 U.S.C. § 343-1(a).

---

[3] Total sugars are declared "to the nearest gram," 21 C.F.R. § 101.9(c)(6)(ii), so a declaration of "1g" corresponds to at least 0.5 gram. The figures in the table below conservatively add the disclosed allulose content to that minimum value.

31. Accordingly, because the Products contain the sugar allulose in amounts far exceeding the one gram represented, the Sugar Representation is false and misleading.

32. Defendant's conduct thus deceived and/or was likely to deceive the public.

33. Plaintiff and Class Members were deceived into believing the Products contained only one gram of sugar per serving, when in fact each serving contains seven grams of allulose, as shown above.

34. Plaintiff and Class Members would not know the true nature of the Products by looking at the front labels of the Products. There is nothing on the front label (like an asterisk) disclaiming or modifying the Sugar Representation. To the contrary, the front label compounds the deception by identifying stevia as the Products' sweetener and omitting any mention of allulose. The Sugar Representation is not ambiguous or vague to reasonable consumers such that they would reasonably think or be expected to investigate the Sugar Representation further before purchasing the Products.

35. Moreover, the back panel does not preclude consumer deception. As the Second Circuit has held, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

36. Here, the back panel does not correct the Sugar Representation—it repeats it. The back panel restates "1G SUGAR" on the same rainbow-colored banner and assures consumers that Defendant "removed all but 1 gram of sugar." The Nutrition Facts panel on each Product declares only one gram of "Total Sugars" per serving. And the only place the Products disclose the quantity of allulose is a net-carbohydrate box that subtracts allulose from total carbohydrates alongside fiber and glycerine, reinforcing the impression that allulose is something other than sugar.

37. Further, average consumers do not know what allulose is (*i.e.*, that it is a sugar), and so reading the ingredient list is insufficient to inform them that the Products contain far more sugar than represented and that the Sugar Representation is therefore false.

38. Plaintiff and Class Members purchased the Products in reliance on the Sugar Representation, reasonably believing each serving contained only one gram of sugar.

39. Plaintiff's and Class Members' reasonable belief that the Products contained only one gram of sugar per serving was a significant factor in their decisions to purchase the Products.

40. Plaintiff and Class Members did not know, and had no reason to know, that the Products contained many grams of sugar because of how the Products are deceptively labeled and advertised to create the impression that they contain only one gram of sugar. Nothing on the front packaging of the Products indicates that the Products contain more than one gram of sugar per serving.

41. Defendant knew that Plaintiff and Class Members would rely on the Sugar Representation and would therefore reasonably believe the Products contained only one gram of sugar per serving. Further, as the formulator and manufacturer of the Products, Defendant knows that allulose is a sugar and knows how much allulose it adds to each serving. Indeed, Defendant's own packaging quantifies the allulose in each serving and describes the Products as "[s]weetened with allulose and stevia"—yet Defendant chose to leave allulose off the front label, where it identifies only stevia as the Products' sweetener, and to tell consumers that it had "removed all but 1 gram of sugar." Defendant repeats these statements on its own website.[4] Accordingly, Defendant

[4] *See* Wiley Wallaby, *Low Sugar Gluten Free Very Berry Licorice*, https://shop.wileywallaby.com/collections/low-sugar-gluten-free-licorice/products/low-sugar-gluten-free-very-berry-licorice (last visited Oct. 28, 2026); Wiley Wallaby, *Low Sugar Gluten Free Watermelon Licorice*, https://shop.wileywallaby.com/collections/low-sugar-gluten-free-licorice/products/low-sugar-gluten-free-watermelon-licorice (last visited Oct. 28, 2026).

knew that the Sugar Representation was false and misleading when it made it, as allulose was added intentionally. Defendant intentionally and knowingly induced consumers to purchase the Products based on the Sugar Representation.

42. Because the Products contain allulose in amounts contrary to the Sugar Representation, Defendant's uniform practice regarding the marketing and sale of the Products was and continues to be misleading and deceptive.

43. Each Class Member has been exposed to the same or substantially similar deceptive practices, as the Products are uniformly marketed with the Sugar Representation even though each serving of the Products contains seven grams of the sugar allulose.

44. Consumers are willing to pay a price premium for products that contain little or no sugar, and Defendant charges a premium for the Products because of the Sugar Representation. On its own website, Defendant sells each 5.5-ounce bag of the Products for $5.99—the same price at which it sells a 10-ounce bag of its conventional Wiley Wallaby licorice, including in Watermelon flavor.[5] Consumers thus pay more than 80% more per ounce for the Products than for Defendant's conventional licorice.

45. Consumers are also induced to make purchases that they otherwise would not have, but for the belief that the Products contained only one gram of sugar per serving. Plaintiff and Class Members would not have purchased the Products had they known the Products contained many grams of sugar in the form of allulose. Further, Plaintiff and Class Members paid a price

---

[5] *Compare* Wiley Wallaby, *Low Sugar Gluten Free Watermelon Licorice*, https://shop.wileywallaby.com/collections/low-sugar-gluten-free-licorice/products/low-sugar-gluten-free-watermelon-licorice (last visited Oct. 28, 2026) ($5.99 for a "5.5 oz. resealable bag"), *with* Wiley Wallaby, *Wiley Wallaby Watermelon Licorice*, https://shop.wileywallaby.com/products/wiley-wallaby-watermelon-licorice (last visited Oct. 28, 2026) ($5.99 for a "10 oz. resealable bag").

premium for the Products because of the Sugar Representation. Therefore, Plaintiff and Class Members suffered an injury in fact and lost money as a result of Defendant's false and misleading Sugar Representation.

## CLASS ALLEGATIONS

46. ***Class Definition***: Plaintiff brings this action on behalf of all people in the following classes and subclasses (collectively referred to as "Class Members"):

> **Nationwide Class:** all people in the United States who purchased the Products for personal or household use.
>
> **New York Subclass:** all people who purchased the Products in the State of New York for personal or household use during the last three years.

47. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

48. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

49. ***Numerosity***: Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, its agents, or other means.

50. ***Commonality and Predominance*****:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

- Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;
- Whether allulose is a sugar;
- Whether the Sugar Representation is false, misleading, and/or deceptive;
- Whether Defendant's conduct in advertising and selling the Products amounted to deceptive business practices;
- Whether Plaintiff and the Class Members have sustained damage as a result of Defendant's deceptive conduct;
- The proper measure of damages sustained by Plaintiff and the Class Members; and
- Whether Defendant was unjustly enriched by its unlawful practices.

51. ***Typicality*****:** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's sale of the Products using false and misleading labeling.

52. ***Adequacy*****:** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

53. ***Superiority*****:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of

individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

54. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### COUNT I
**Violation of New York General Business Law § 349**
**(On Behalf of the New York Subclass)**

55. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

56. Plaintiff brings this cause of action individually and on behalf of the New York Subclass.

57. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

58. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

59. Plaintiff and Class Members are consumers who purchased the Products for their personal use.

60. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, as alleged above.

61. The foregoing deceptive acts and practices were directed at consumers.

62. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.

63. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

64. Defendant's actions are the direct, foreseeable, and proximate cause of the damages Plaintiff and Class Members have sustained from having paid for and used the Products.

65. As a result of Defendant's violations, Plaintiff and Class Members have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew about Defendant's misrepresentation; (b) they paid a price premium for the Products due to the misrepresentation; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

66. Plaintiff seeks all available relief under this cause of action, including actual damages or fifty dollars, whichever is greater; increased damages of up to three times actual damages, not to exceed one thousand dollars, for Defendant's willful or knowing violations; injunctive relief; and reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

## COUNT II
## Violation of New York General Business Law § 350
## (On Behalf of the New York Subclass)

67. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

68. Plaintiff brings this cause of action individually and on behalf of the New York Subclass.

69. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service.

70. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a(1).

71. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

72. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers. Defendant also actively concealed and knowingly omitted material facts regarding the true nature of the Products.

73. Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

74. Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

75. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiff and Class Members have suffered and continue to suffer economic injury.

76. As a result of Defendant's violations, Plaintiff and Class Members have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew about Defendant's misrepresentation; (b) they paid a price premium for the Products due to the misrepresentation; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

77. Plaintiff seeks all available relief under this cause of action, including actual damages or five hundred dollars, whichever is greater; increased damages of up to three times

actual damages, not to exceed ten thousand dollars, for Defendant's willful or knowing violations; injunctive relief; and reasonable attorneys' fees. N.Y. Gen. Bus. Law § 350-e(3).

**COUNT III**
**Fraud**
**(On Behalf of the Nationwide Class and New York Subclass)**

78. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

79. Plaintiff brings this cause of action individually and on behalf of the Class and Subclass members.

80. As discussed above, Defendant provided Plaintiff and Class Members with false or misleading material information about the Products, including but not limited to the Sugar Representation.

81. This misrepresentation was made with knowledge of its falsehood.

82. The misrepresentation made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, was intended to induce, and actually induced, Plaintiff and Class Members to purchase the Products.

83. The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and New York Subclass)**

84. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

85. Plaintiff brings this cause of action individually and on behalf of the Class and Subclass members.

86. Defendant, through the Sugar Representation and its other misleading representations and omissions, enticed Plaintiff and Class Members to purchase the Products.

87. Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products.

88. By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

89. Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

90. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and Class Members as the result of its deceptive marketing and advertising practices.

91. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging, all profits, benefits, and other compensation obtained by Defendant due to its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, prays for the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of undersigned counsel as counsel for the classes;

D. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E. For an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

F. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

G. For prejudgment interest on all amounts awarded;

H. For an order of restitution and all other forms of equitable monetary relief;

I. For an order awarding Plaintiff and Class Members their reasonable attorneys' fees, expenses, and costs of suit; and

J. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 2, 2026

Respectfully submitted,

**KAMBERLAW, LLC**

By: */s/ Frederick J. Klorczyk III*
Frederick J. Klorczyk III

Frederick J. Klorczyk III
Edward M. Kamber
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com
ekamber@kamberlaw.com

*Attorneys for Plaintiff and the Proposed Classes*